```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 Irena Eppel,

                  Plaintiff,              MEMORANDUM & ORDER
                                          19-cv-5555 (EK)(MMH)

         -against-

 United States of America,

                  Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Irena Eppel sued the federal government under the Federal Tort Claims Act after she tripped and fell on a sidewalk abutting federal property. The government has moved to dismiss, arguing that the FTCA's discretionary function exception deprives this Court of subject-matter jurisdiction. For the following reasons, the government's motion to dismiss is granted.

## I. Background

        The facts recited below are derived from the Complaint, ECF No. 1, and the plaintiff's April 12, 2024 letter, ECF No. 52. "[T]he allegations of the complaint should be construed favorably to the pleader" on a motion to dismiss for lack of subject matter jurisdiction. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). On August 6, 2015, Eppel allegedly tripped and fell on a sidewalk near the Department of Veterans

Affairs New York Harbor Healthcare System Manhattan Campus ("VAMC"). *See* Compl. ¶¶ 8, 32-33. Eppel suffered "severe and permanent injuries" in the fall. *See id.* ¶ 34. Eppel does not contend that the government created the sidewalk condition. Nor does she allege that the federal government owns the sidewalk in question. *See id.* ¶ 17 (describing the sidewalk as "abutting the [federal] premises"). Rather, she claims that the VA failed to maintain the sidewalk in the manner required by the New York City Administrative Code ("NYC Code"), giving rise to federal liability. *See id.* ¶¶ 15-19; Pl. Ltr. at 4-5, ECF No. 52.

Though this case was filed in October 2019,[1] the government did not move to dismiss for lack of jurisdiction until May 2024. The parties (and the Court) have now expended significant time and resources on motion practice, discovery, mediation, and trial preparation. While defects in subject matter jurisdiction may of course be raised at any time, the Court reiterates the point made at oral argument: the government should establish a process to ensure earlier consideration of potential jurisdictional defects.[2]

---

[1] The case was transferred to the undersigned on March 2, 2020.

[2] This is not the first time this issue has arisen before the undersigned. *See, e.g.*, *Harrison v. United States*, No. 17-CV-5049, 2023 WL 8860409 (E.D.N.Y. Dec. 19, 2023).

## II.  Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[3] When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 283 (2d Cir. 2023); *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).  Furthermore, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

## III. Discussion

We begin with a discussion of the Federal Tort Claims Act (the "FTCA"), its waiver of sovereign immunity, and the limits on that waiver that emerge from the discretionary function exception (the "DFE").  We then proceed to assess the two prongs of the DFE in sequence, concluding that both are satisfied.

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

**A.     The FTCA and the Discretionary Function Exception**

Because the United States is the defendant, the case presents unique jurisdictional concerns. Sovereign immunity generally shields the United States from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). When the United States does waive sovereign immunity, federal courts must strictly police any "limitations and conditions upon which the Government consents to be sued," and "exceptions" to those limits and conditions "are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981). *Explicit* consent, therefore, is a prerequisite for subject matter jurisdiction. *See Mitchell,* 463 U.S. at 212; *United States v. Sherwood,* 312 U.S. 584, 586 (1941).

The FTCA sets out a waiver of sovereign immunity. Congress decreed that the United States would accept liability in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see also* 28 U.S.C. § 1346(b)(1) (establishing original jurisdiction over tort actions against the United States).[4]

---

[4] Section 1346(b)(1) provides the federal district courts with jurisdiction over

At the same time, the FTCA expressly excludes certain categories of claims from its waiver. These include claims based on a discretionary function. The FTCA excludes:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The DFE "is thus a form of retained sovereign immunity," *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 190 (2d Cir. 2008); when it applies, federal courts lack subject matter jurisdiction. *See Fazi v. United States*, 935 F.2d 535, 537 (2d Cir. 1991).

Courts apply a two-part test — the *Berkovitz-Gaubert* test — to determine whether a claim is based upon an agency's performance of a discretionary function. *See United States v. Gaubert,* 499 U.S. 315, 322-23 (1991); *Berkowitz ex rel. Berkowitz v. United States,* 486 U.S. 531, 536 (1988). The DFE applies "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an

---

civil actions on claims against the United States, for money damages . . . for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

5

element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000).

The federal laws governing sidewalk repair make clear that both prongs of the *Berkovitz-Gaubert* test are met in this case. Eppel's claim is thus barred by the DFE.

**B.   The Federal Legal Scheme Involves Judgment and Choice**

The first prong of the *Berkovitz-Gaubert* test asks whether the allegedly negligent conduct was discretionary, meaning that it "involves an element of judgment or choice." *See Berkowitz,* 486 U.S. at 536. The search for such an element is not "confined to the policy or planning level." *Gaubert,* 499 U.S. at 325. Rather, an agency's "[d]ay-to-day management" will often require "judgment as to which of a range of permissible courses is the wisest." *Id.* If an obligation is discretionary, even a total failure to act in respect of that obligation will qualify as discretionary action. *See* 28 U.S.C. § 2680(a); *In re World Trade Ctr. Disaster Site Litig.,* 521 F.3d 169, 190 (2d Cir. 2008) ("The FTCA . . . waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions.").

6

At the same time, agency action does *not* involve judgment when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. Put differently, a government action is non-discretionary when it is "inconsistent with a specific mandatory directive." *Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021) (citing *Berkovitz*, 486 U.S. at 536).

Here, the applicable statute and regulation are expressly non-mandatory. The governing statute — 40 U.S.C. § 589(a) — states that an executive agency "*may* install, repair, and replace sidewalks around buildings, installations, property, or grounds" that are under the agency's control and owned by the United States. (Emphasis added.) As the Court of Appeals has (unsurprisingly) observed, the word "may" implies a permissive, rather than mandatory, instruction. *See, e.g., Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (collecting cases).

The applicable *regulation* is perhaps even more obviously discretionary. 41 C.F.R. § 102-74.580, entitled "Who decides when to replace a sidewalk?" states that:

> Federal agencies, giving due consideration to State and local standards and specifications for sidewalks, decide when to install, repair or replace a sidewalk. However, federal agencies may prescribe other standards and specifications for sidewalks whenever

7

> necessary to achieve architectural harmony and maintain facility security.

The regulation thus identifies certain state-and-local inputs for the agency's "consideration," but in the end leaves it to the agency to "decide" when to take action and what action to take (e.g., repair versus replacement). This plainly involves the exercise of judgment and choice contemplated by *Gaubert* and *Berkovitz*.

Two other district courts analyzing this same sidewalk scheme also concluded that the agencies' obligations satisfied the *Berkovitz-Gaubert* test. *See Mejia v. United States,* No. 13-CV-5676, 2015 WL 5138708, at *9 (S.D.N.Y. Sept. 1, 2015); *Gagne v. United States*, No. 3:21-CV-1601-VLB, 2023 WL 143163, at *5 (D. Conn. Jan. 10, 2023). Judge Nathan's decision in *Mejia* is persuasively reasoned and is on all fours with this case. There, as here, the plaintiff allegedly tripped and fell on a New York City sidewalk abutting federal property (a Coast Guard facility, in that case). 2015 WL 5138708, at *1. The same statutory scheme was at issue in *Mejia*: 40 U.S.C. § 589(e) and 41 C.F.R. § 102-74.580. *Id.* at *5-7.[5] Judge Nathan read these authorities to confer "wide latitude" on federal agencies in connection with the timing (and extent) of sidewalk repairs.

---

[5] Judge Nathan also noted Coast Guard protocols — a subject on which the parties to that case had provided "copious detail." *Mejia,* 2015 WL 5138708, at *2, *6.

8

*Id.* This conclusion is incontestable, given the language at issue.

Eppel argues that a more apt case for comparison is *Gotha v. United States*, 115 F.3d 176 (3d Cir. 1997). This argument does not carry the day. *Gotha* was a straightforward common-law negligence case arising out of the U.S. Navy's failure to install guardrails and lighting on a steep outdoor footpath. It is distinguishable from this case in that no federal statute or regulation directly addressed the Navy's decision, *id.* at 393-95, whereas here we have a federal statute and regulation that are plainly discretionary on their face. *Mejia*, too, declined to follow *Gotha's* lead. 2015 WL 5138708, at *9. In any event, *Gotha* is of course non-binding here.

Thus, the statutes and regulations governing maintenance of VA-adjacent sidewalks leave considerable "room for choice or judgment." *Gaubert*, 499 U.S. at 324. Accordingly, the first prong of the *Berkovitz-Gaubert* test is met.

C.  **The VA's Decision Was Susceptible of Policy Analysis**

Once the challenged agency conduct passes the first prong of the *Berkovitz-Gaubert* test, the Court must ask whether the agency's "judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Congress enacted the DFE to prevent "judicial

9

second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323.

The two prongs of the *Berkovitz-Gaubert* test are not uncorrelated. The Court counseled in *Gaubert* that when the first prong (statutory or regulatory *discretion*) goes in the government's favor, the government is likely to succeed on the second prong (grounding in *policy*) as well. The Court wrote that when "a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations" at issue. 499 U.S. at 324.[6]

This is true not only in the context of policymaking by higher executives, but also of lower-level operational personnel: where "there is discretion," the "acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 811 (1984); *see also id.* at 820

---

[6] This presumption was important enough that the *Gaubert* Court effectively repeated it: "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, *it must be presumed* that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324 (emphasis added).

10

(FAA employees' "alleged negligence in failing to check certain specific items in the course of certificating a particular aircraft falls squarely within the discretionary function exception").

Thus, when the government succeeds in demonstrating that the legal regime affords discretion, the plaintiff bears the burden of alleging "facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25. Eppel has not carried that burden.

Here, the decisions that Congress hoped to shield from second-guessing were about budgetary prioritization — that is, considerations of economic policy. Because funds for sidewalk maintenance come from funds generally available for VA maintenance, decisions about whether and when to repair the sidewalk necessarily implicate agency prioritization among projects. *See* 40 U.S.C. § 589(d) (source of funding for maintenance); 41 C.F.R. § 102-74.10 (setting out factors for the VA's consideration when making maintenance decisions). Where an agency must "prioritize among [repair] projects because of its restricted budget and its limited ability to make repairs," its

11

decision-making "legitimately exercise[s] discretion." *Mitchell v. United States*, 225 F.3d 361, 364 (3d Cir. 2000).[7]

Moreover, the language of another applicable regulation shows Congress choosing to afford agencies less discretion over *building* maintenance than sidewalk maintenance. Under Section 102-74.10, the "maintenance of buildings . . . must . . . [m]eet nationally recognized standards," among other factors. Yet, federal agencies may "decide when to . . . repair or replace a sidewalk" without meeting national or local standards. 41 C.F.R. § 102-74.580. This comparison highlights the latitude embedded in the regulation at issue here.

Courts have consistently found that agency consideration of similar factors merits application of the DFE. *See, e.g., Reichhart v. United States*, 408 Fed. App'x 441, 443 (2d Cir. 2011) (affirming dismissal under DFE; policy factors included the cost to repair a pier and allocation of resources); *Coulthurst*, 214 F.3d at 109 (DFE applies to "choices motivated by considerations of economy, efficiency, and safety"); *Gagne*, 2023 WL 143163, at *5 ("[T]he decision on whether to repair or replace a sidewalk is a policy judgment the discretionary function exception is designed to shield."). The VA's judgment

---

[7] *Mitchell* analyzed this proposition regarding prong one of the *Berkovitz-Gaubert* test. However, the discussion is applicable to both elements.

12

concerning whether and when to repair a sidewalk is a discretionary decision susceptible to policy analysis.

### D. Plaintiff's Reliance on the NYC Administrative Code Is Unavailing

In her effort to identify a non-discretionary duty, Eppel looks to the law of New York City. She invokes two City ordinances. The first, Section 7-210 of the City's Administrative Code, imposes a "duty" on the "owner of real property abutting any sidewalk" to "maintain such sidewalk in a reasonably safe condition," and establishes liability for the failure to do so. NYC Code § 7-210. And the second, Section 19-152, dictates that property owners "shall," in specified circumstances, "repave, reconstruct and repair" sidewalks to address any "substantial defect." NYC Code § 19-152.[8]

Eppel asserts that these requirements "were in effect at all relevant times" in this case, Pl.'s Opp. Br. at 5, ECF No. 62, and that "as the owner of the abutting premises," the federal government "was obligated to comply with those sections of the Administrative Code" unless the Code was "superseded by federal law." *Id.* Eppel goes on to argue that the City's rules "were not" superseded by any federal law. *Id.* Instead, she

---

[8] Section 19-152 defines a "substantial defect" in a sidewalk flag to include a "vertical grade differential between adjacent sidewalk flags . . . greater than one half inch," "hardware or other appurtenances not flush within 1/2 [inch] of the sidewalk surface" and "patchwork" meaning "less than full-depth repairs to all or part of the surface area of broken, cracked or chipped flag(s)."

13

asserts, federal law allows agencies to deviate from the local ordinance for only two enumerated reasons: to "achieve architectural harmony" and to "maintain facility security," as set out in 41 C.F.R. § 102-74.10. *See id.*

Under the FTCA, state law controls on the question of whether the plaintiff has stated a claim on which relief can be granted. *See* 28 U.S.C. § 1346(b)(1) (authorizing tort-law suits against the United States "in accordance with the law of the place where the act or omission occurred"). Plaintiff's invocation of the City's Administrative Code thus might carry the day if the government were moving to dismiss for failure to state a claim. The problem for the plaintiff is that federal law controls when it comes to the interpretation of the FTCA's exclusions. *See United States v. Neustadt,* 366 U.S. 696, 705-706 (1961) (noting that the scope of FTCA exceptions "depends solely upon what Congress meant by the language it used," rather than any state law); *see also* 2 Jayson & Longstreth, Handling Federal Tort Claims §§ 9.09, 11.07.

The government argues that federal law governing agencies' sidewalk maintenance "supersedes" the more specific guidance in Section 19-152, and that the FTCA "modifies the scope of any duty imposed" by the City in the event of a conflict. Def. Ltr., ECF No. 49. In support, the government cites *Roditis v. United States*, 122 F.3d 108, 112 (2d Cir.

14

1997), which held that in the face of a conflict between federal and state-law obligations, the federal government may not be held liable "even where state law would impose liability." *See also Jencks v. United States,* No. 18-CV-1454 (BMC), 2018 WL 4326930, at *3 (E.D.N.Y. Sept. 10, 2018) (holding that when a conflict between the FTCA and state law arises, "the case law is clear that sovereign immunity prevails," and citing *Roditis* and other cases).

The government is correct that New York law cannot impose a direct duty on the federal government — at least not one that is in conflict with federal law, as the City rules are here to the extent that they are mandatory. Eppel, in contrast, is *not* correct that federal law incorporates the New York City requirements here except to the extent that "architectural harmony" or "facility safety" require otherwise. This assertion is based on Eppel's misreading of the federal regulation, which first establishes "wide latitude" for decision-making in respect of sidewalk maintenance, as Judge Nathan put it, and only thereafter invites the agency to "prescribe other standards and specifications" regarding architecture and safety if it chooses. *See Mejia,* 2015 WL 5138708, at *6.

No court has held that the NYC Code sidewalk maintenance standard is incorporated by reference into the federal regulation. Such a holding would be inconsistent with

15

the plain language of the statute, which mandates "consideration" rather than compliance. *See generally id.*, 2015 WL 5138708, at *9. Eppel therefore cannot overcome the DFE. *Berkovitz*, 486 U.S. at 536.

### IV. Conclusion

The government's motion is granted, and the case is dismissed without prejudice. *See Leytman v. United States*, 832 Fed. App'x. 720, 722 (2d Cir. 2020) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice."). The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   August 7, 2024
        Brooklyn, New York

16